# STATE OF NORTH CAROLINA FILED

**MECKLENBURG** County 2016 SEP -9 PM 12: 06

MECKLENBURG CO. C.S.C.

BY_____

| | |
|---|---|
| **File No.** 16-CVS- 16422 | |

**In The General Court of Justice**
☐ District ☒ Superior Court Division

| Name and Address of Plaintiff 1 | |
|---|---|
| AMERICAN EMO TRANS, INC. 2600 Hutchinson McDonald Road Charlotte, NC 28269 | |

## GENERAL
## CIVIL ACTION COVER SHEET
☒ INITIAL FILING ☐ SUBSEQUENT FILING

*Name and Address of Plaintiff 2*

Rule 5(b), Rules of Practice for Superior and District Courts

*Name And Address of Attorney or Party, If Not Represented (complete for initial appearance or change of address)*
Cynthia L. Van Horne, Esq.
301 S. College Street, Suite 2300
Charlotte, North Carolina 28202

## VERSUS

*Name of Defendant 1*
MUNICH RE SYNDICATE, LTD, F.K.A WATKINS UNDERWRITERS AT LLOYD'S

| Telephone No. (704) 342-5305 | Cell Telephone No. |
|---|---|
| NC Attorney Bar No. 18322 | Attorney E-Mail Address Cvanhorne@poynerspruill.com |

**Summons Submitted** ☒ Yes ☐ No

☒ Initial Appearance in Case ☐ Change of Address

*Name of Defendant 2*

*Name of Firm*
POYNER SPRUILL LLP

*FAX No.*
(704) 342-5264

*Counsel for*
☒ All Plaintiffs ☐ All Defendants ☐ Only *(List party(ies) represented)*

**Summons Submitted** ☐ Yes ☐ No

☒ Jury Demanded in Pleading
☐ Complex Litigation

☐ Amount in controversy does not exceed $15,000
☐ Stipulate to arbitration

| TYPE OF PLEADING | CLAIM FOR RELIEF FOR: |
|---|---|
| *(check all that apply)* | *(check all that apply)* |

**TYPE OF PLEADING** *(check all that apply)*
- ☐ Amended Answer/Reply (AMND-Response)
- ☐ Amended Complaint (AMND)
- ☐ Answer/Reply (ANSW-Response)
- ☒ Complaint (COMP)
- ☐ Confession of Judgment (CNFJ)
- ☐ Counterclaim vs. (CTCL)
  - ☐ All Plaintiffs ☐ Only *(List on back)*
- ☐ Crossclaim vs. *(List on back)* (CRSS)
- ☐ Extend Statute of Limitations, Rule 9 (ESOL)
- ☐ Extend Time for Answer (MEOT-Response)
- ☐ Extend Time For Complaint (EXCO)
- ☐ Rule 12 Motion in Lieu Of Answer (MDLA)
- ☐ Third Party Complaint *(List Third Party Defendants on Back)* (TPCL)
- ☐ Other: *(specify)*

**CLAIM FOR RELIEF FOR:** *(check all that apply)*
- ☐ Administrative Appeal (ADMA)
- ☐ Appointment of Receiver (APRC)
- ☐ Attachment/Garnishment (ATTC)
- ☐ Claim and Delivery (CLMD)
- ☐ Collection on Account (ACCT)
- ☐ Condemnation (CNDM)
- ☒ Contract (CNTR)
- ☐ Discovery Scheduling Order (DSCH)
- ☐ Injunction (INJU)
- ☐ Medical Malpractice (MDML)
- ☐ Minor Settlement (MSTL)
- ☒ Money Owed (MNYO)
- ☐ Negligence – Motor Vehicle (MVNG)
- ☐ Negligence – Other (NEGO)
- ☐ Motor Vehicle Lien G.S. 44A (MVLN)
- ☐ Limited Driving Privilege – Out-of-State Convictions (PLDP)
- ☐ Possession of Personal Property (POPP)
- ☐ Product Liability (PROD)
- ☐ Real Property (RLPR)
- ☐ Specific Performance (SPPR)
- ☐ Other: *(specify)*

**NOTE:** Small claims are exempt from cover sheets.

| Date 09/09/16 | Signature of Attorney/Party |
|---|---|

**NOTE:** The initial filing in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must either include a cover sheet or the filing must comply with G.S. 7A-34.1.

# STATE OF NORTH CAROLINA

File No. 16-CVS- 16422

▶

**MECKLENBURG** County

In The General Court of Justice
☐ District ☒ Superior Court Division

| | |
|---|---|
| *Name of Plaintiff*<br>AMERICAN EMO TRANS, INC.<br>*Address*<br>2600 Hutchinson McDonald Road<br>Charlotte, NC 28269 | **CIVIL SUMMONS**<br><br>☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |

<b>VERSUS</b>

G.S. 1A-1, Rules-3, 4

| | |
|---|---|
| *Name of Defendant(s)*<br><br>MUNICH RE SYNDICATE, LTD, F.K.A. WATKINS UNDERWRITERS AT LLOYD'S | *Date Original Summons Issued*<br><br>*Date(s) Subsequent Summon(es) Issued* |

### To Each of The Defendant(s) Named Below:

| *Name And Address of Defendant 1*<br> MUNICH RE SYNDICATE, LTD, F.K.A. WATKINS<br> UNDERWRITERS AT LLOYD'S -<br> c/o Mendes & Mount - Agent for Services Processed for Underwriters<br>750 7th Avenue<br>New York, New York 10019-6829 | *Name And Address of Defendant 2* |
|---|---|

### A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address of Plaintiff's Attorney (If None, Address of Plaintiff)*<br>CYNTHIA L. VAN HORNE<br>POYNER SPRUILL<br>301 S. COLLEGE STREET<br>CHARLOTTE, NC 28202 | *Date Issued* 9/09/16 | *Time* 2:06 ☐ AM ☒ PM |
|---|---|---|
| | *Signature* | |
| | ☐ Deputy CSC ☒ Assistant CSC ☐ Clerk of Superior Court | |

| ☐ **ENDORSEMENT (ASSESS FEE)**<br><br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date of Endorsement* | *Time* ☐ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk of Superior Court | |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration and, if so, what procedure is to be followed.*

AOC-CV-100, Rev. 6/11
© 2011 Administrative Office of the Courts

(Over)

**RETURN OF SERVICE**

STATE OF NORTH CAROLINA     IN THE GENERAL COURT OF JUSTICE

MECKLENBURG COUNTY     SUPERIOR COURT DIVISION

16 CVS 16422

|  |  |
|---|---|
| AMERICAN EMO TRANS, INC., | |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| MUNICH RE SYNDICATE, LTD, F.K.A., WATKINS UNDERWRITERS AT LLOYD'S | |
| Defendants. | |

AMERICAN EMO TRANS, INC., by and through its undersigned attorneys, alleges and says the following:

1.     American EMO Trans, Inc. is a corporation organized and existing under the laws of the State of North Carolina with its principal place of business in Mecklenburg County, North Carolina.

2.     Munich Re Syndicate, LTD, through Roanoke Insurance Group, Inc., issued an Errors & Omissions Policy to American EMO Trans, Inc., bearing policy number 13EO0078, with policy effective date of December 6, 2013 through December 6, 2014 (the "E&O Policy"). A copy of the E&O Policy is attached hereto as Exhibit A.

3.     This suit arises out of Defendant's July 26, 2016 denial of coverage for a claim covered by the E&O policy.

4.     Among other relief, this suit seeks a declaratory judgment under North Carolina General Statutes § 1-253, *et seq.*, in order to determine the rights and obligations of the parties arising under the E&O policy and under applicable North Carolina law.

## THE UNDERLYING CLAIM

5.     On or about February 14, 2013, Ralph Thomsen, representative of Oerlikon Textile GmbH & Co. KG, requested a quote from American EMO Trans, Inc. for the shipment, U.S. Customs clearance, and delivery of fourteen (14) containers containing winding machines (the "Goods"). In response, Hans Peter Betz, President and Chief Executive Officer of American EMO Trans, Inc., responded with a quote of $77,164.00 U.S. Dollars. A copy of American EMO Trans' quote in its original and English-translation forms are attached as Exhibit B.

6.     Upon receipt of American EMO Trans' quote, Oerlikon unconditionally accepted and, therefore, the $77,164.00 quote, in combination with Oerlikon's acceptance, became a binding contract between American EMO Trans and Oerlikon for the shipment, U.S. Customs clearance, and delivery of the Goods. The contract formed upon Oerlikon's acceptance is hereinafter referred to as the "American EMO Trans/Oerlikon Contract."

7.     In extending its quote to Oerlikon, Mr. Betz erred in failing to include the duty required to be paid on the Goods to U. S. Customs in the amount of $158,553.47.

8.     In extending the quote, Mr. Betz was acting in the course and scope of his employment with American EMO Trans rendering professional services as a "Transportation Intermediary" and as a "Customs Broker" as those terms are defined in the E& O Policy.

9.     Upon the Goods' clearance into the United States through U.S. Customs, U.S. Customs claimed and consequently drafted against American EMO Trans' account duties owed on the Goods in the amount of $158,553.47.

10.     At Roanoke's suggestion and request, based on its position that Oerlikon had not yet made a "claim" against American EMO Trans triggering Defendant's indemnity obligations under the E&O Policy, American EMO Trans demanded Oerlikon pay the $158,553.47 duty

2

claimed by and drafted against American EMO Trans' account by U.S. Customs. Because Oerlikon had already accepted American EMO Trans' $77,164.00 quote, and American EMO Trans was legally bound to provide the services according to the American EMO Trans/Oerlikon Contract, Oerlikon justifiably refused to reimburse American EMO Trans the duty claimed and drafted against American EMO Trans' account by U.S. Customs.

11.    Oerlikon's justifiable refusal did not negate American EMO Trans' legal obligation to pay the duty claimed on the Goods by U.S. Customs.

## AMERCIAN EMO TRANS' CLAIM AGAINST THE POLICY

12.    On or about January 8, 2014, in accordance with the terms of the Policy, American EMO Trans made a claim against the E&O Policy to recover the $158,553.47 in damages it suffered as a result of U.S. Customs' claim and draft against American EMO Trans' account for the duty owed on the Goods (the "Claim").

13.    Thereafter, Roanoke issued a reservation of rights letter on the primary basis that Oerlikon had not made a claim under the Policy. This position failed to take into account that U.S. Customs had claimed and drafted the duty owed on the Goods from American EMO Trans' account and that American EMO Trans suffered damages arising from American EMO Trans' negligent failure to include in its quote to Oerlikon the duties owed and U.S. Custom's claim and collection of such duties.

14.    Thereafter, despite repeated demands by American EMO Trans to Roanoke for a definitive response to the Claim, Roanoke failed to substantively respond until finally, while indicating that Defendant had not denied the Claim, it offered $20,000 to settle the Claim, without explanation of why it was not offering to fully indemnify American Emo Trans for the damages it suffered.

3

15.     After more delay in responding to the Claim by Defendant, American EMO Trans was required to retain counsel to pursue its Claim under the Policy.

16.     On July 26, 2016, Roanoke, on behalf of Defendant, denied the Claim, more than two years after it was initially presented, primarily on the basis that "for reasons known only to it, [American] EMO [Trans] decided to pay not only the duty on the first shipments that were made but also the duty on the several additional shipments that had not been made at the time it was determined that the duty was owed."

17.     The reasons American EMO Trans paid, and did not interfere with U.S. Customs' claim and draft against its account for payment of the duty, are:

(a) Had American EMO Trans interfered with or not paid U.S. Customs' claim for the duty owed on the Goods, Oerlikon would have sustained certain serious civil penalties, up to four times the lawful duties, taxes and fees owed on the Goods, and potentially other damages caused by any delay or interference with delivery of the Goods, which Oerlikon would have claimed against American EMO Trans;

(b) In light of the binding nature of the American EMO Trans/Oerlikon Contract, American Emo Trans had no defense to payment of U.S. Customs' claim for the duties owed;

(c) In light of the binding nature of the American EMO Trans/Oerlikon Contract, had American EMO Trans not paid the duty owed to and claimed by U.S. Customs, American Emo Trans would have had no defense to Oerlikon's claim for damages, and consequently would have faced liability to Oerlikon far exceeding the duty owed to and claimed by U.S. Customs;

4

(d) Had American EMO Trans interfered with or not paid U.S. Customs' claim for the duty owed on the Goods, such refusal of payment and interference would have constituted a "dishonest, criminal …, knowingly wrongful act …[and] willful violation of [an] ordinance" by American EMO Trans, in violation of Exclusion 1 of the E&O Policy.

18.     Despite the statements in its denial letter, Defendant, through Roanoke, was aware of American EMO Trans' reasons for not interfering with U.S. Customs' claim for the duty owed on the Goods and its draft against American EMO Trans' account for the required duty.

19.     Because American EMO Trans had no legal basis for interfering U.S. Customs' claim for payment of the duty and its consequent draft against American EMO Trans' account, and because interfering with U.S. Customs' claim for payment would have exposed both American EMO Trans and Oerlikon to liability substantially greater than the $158,553.47 claimed by U.S. Customs, American EMO Trans' failure to interfere with U.S. Customs' claims and drafts against American EMO Trans' account was *per se* reasonable, caused no damage to Defendant (and, in fact, lessened Defendant's exposure to claims by Oerlikon had American EMO Trans interfered with or not paid U.S. Customs' claim for the duty owed on the Goods), and provides no basis for Defendant's denial of American EMO Trans' Claim under the Policy.

20.     Because American EMO Trans was "legally obligated to pay" U.S. Custom's claim of $158,553.47 for duty owed on the Goods on account of American EMO Trans' "negligent act, error or omission" in failing to include such charges in its quote to Oerlikon before such time as the quote became legally binding on American EMO Trans, and because American EMO Trans' failure to include the duty charge in its binding quote to Oerlikon was a "negligent act, error or omission" made "in the rendering of or failure to render professional

5

services as a Transportation and Intermediary and Customs broker," Defendant is fully liable for the $158,553.47 in damages suffered by American EMO Trans.

21.     Defendant has no other valid basis for denying the Claim, or for failing to indemnify American Emo Trans the full value of the Claim.

## COUNT I

## DECLARATORY JUDGMENT

22.     The allegations set forth in Paragraphs 1 through 21 above are realleged and incorporated by reference as if fully set forth herein.

23.     A real and justiciable controversy now exists between Defendant and American Emo Trans whether Defendant must indemnify American Emo Trans under the E&O Policy and applicable North Carolina law for the amounts claimed by U.S. Customs and drafted from American Emo Trans' account.

24.     Pursuant to the Uniform Declaratory Judgment Act, N.C. Gen. Stat. §1-253, American Emo Trans prays for a decision by the Court, holding that it is entitled to be indemnified under the E&O Policy in the full amount of its damages and loss, in the amount of $158,553.47, plus interest at the legal rate until paid in full.

## COUNT II

## BREACH OF CONTRACT

25.     The allegations set forth in Paragraphs 1 through 24 above are realleged and incorporated by reference as if fully set forth herein.

26.     Defendant breached the E&O Policy by failing to timely adjust American Emo Trans' claim and failing to fully indemnify American Emo Trans for the full value of its loss.

6

27.     As a result of Defendant's breach of the E&O Policy, American Emo Trans is entitled to have and recover damages in the amount of $158,553.47, plus interest at the legal rate until paid in full, and attorney's fees as allowed under the E&O Policy and by law.

## COUNT III

## UNFAIR AND DECEPTIVE TRADE PRACTICES

28.     The allegations set forth in Paragraphs 1 through 27 above are realleged and incorporated by reference as if fully set forth herein.

29.     Defendant's business operations constitute commerce as defined under Chapter 75 of the North Carolina General Statutes.

30.     Defendant's failure to timely adjust American Emo Trans' claim and fully indemnify American Emo Trans for the damages it suffered constitutes unfair and/or deceptive trade practices as defined by N.C. Gen. Stat. § 75-1.1, which have proximately caused damages to American Emo Trans.

31.     As a direct and proximate result of Defendant's unfair and/or deceptive trade practices, American Emo Trans is entitled to have and recover of Defendant the amount of $158,553.47, plus interest at the legal rate, and to have those damages trebled, and to recover its attorney's fees pursuant to N.C. Gen. Stat. §75-1.1 and §75-16.1.

WHEREFORE, American EMO Trans demands judgment as follows:

1.     Pursuant to Count I, that the Court declare that American EMO Trans is entitled to be indemnified by Defendant under the E&O Policy in the full amount of its damages and loss, in the amount of $158,553.47, plus interest at the legal rate until paid in full;

7

2. Pursuant to Count II, that the Court enter judgment against Defendant in favor of American Emo Trans in the amount of $158,553.47, plus interest at the legal rate until paid in full;

3. Pursuant to Count III, that the Court enter judgment against Defendant in favor of American Emo Trans in the amount of $158,553.47, plus interest at the legal rate until paid in full and to have those damages trebled, and to recover its attorney's fees pursuant to N.C. Gen. Stat. §75-1.1 and §75-16.1.

4. That the Court tax the costs of this action against Defendant;

5. That American EMO Trans have such further relief as the Court may deem just and proper; and

6. That all issues of fact be tried by a jury.

This the _____ day of _____, 2016.

POYNER SPRUILL LLP

By: _____
E. Fitzgerald Parnell III
N.C. State Bar No. 5781
Cynthia L. Van Horne
N.C. State Bar No. 18322
301 South College Street, suite 2300
Charlotte, NC 28202
Telephone: (704) 342-5250

ATTORNEYS FOR PLAINTIFF

8



# Errors & Omissions Policy
## for American Emo Trans, Inc.



 ROANOKE

Provided by  Roanoke Insurance Group Inc
Insured by  Certain Underwriters at Lloyd's
Effective  12/06/2013 to 12/06/2014



EXHIBIT


**ROANOKE**

CLAIMS INSTRUCTIONS
Report claims and submit supporting documents to:
Roanoke Insurance Group Inc.
1475 East Woodfield Road, Suite 500, Schaumburg, IL 60173
Telephone 1-847-969-1420        Fax 1-847-969-8200
Email: karen.rzeszutko@roanoketrade.com

## TRANSPORTATION INTERMEDIARY AND CUSTOMS BROKERS ERRORS AND OMISSIONS INSURANCE POLICY
### SECURITY 100% CERTAIN UNDERWRITERS AT LLOYDS
#### Syndicate Listing - 100% WTK #457

This policy provides Claims Made coverage. The policy applies only to any negligent act committed subsequent to the retroactive date, if applicable, and which is first made against the insured and reported to Roanoke Insurance Group in writing during the policy period. Claim expenses shall reduce and may exhaust the limit of liability.

| | |
|---|---|
| **Policy Number:** | 13EO0078 |
| **Named Insured:** | American Emo Trans, Inc. |
| **Mailing Address:** | 2600 Hutchinson McDonald Road, Charlotte, NC 28269 |
| **Policy Period:** | From: 12/06/2013 to 12/06/2014 12:01 AM standard time at the address of the Named Insured as stated herein. |
| **Premium:** | $5,474.00 |
| **Terrorism Premium:** (if applicable) | $55.00 |
| **Limits of Liability:** | The limit of Underwriters' liability shall be stated herein, subject to all the terms and conditions of this policy having reference thereto. |
| | $250,000    each and every claim subject to |
| | $250,000    aggregate limit for all claims made and reported during the policy period. |
| **Deductible:** | $5,000 for each and every claim or interrelated claims as per Condition II of the policy. |
| **Retroactive Date:** | 12/06/2000 |

**Special Conditions** – All legal services in this policy are provided by attorneys appointed by Underwriters. Any legal fees incurred by the Insured without Underwriters' prior express authorization will not be covered under this policy.

By acceptance of the policy, the Named Insured agrees that the statements in the application (including exhibits, appendices and addenda), duly signed and dated by the Named Insured or representative thereof, which is attached to and incorporated in this policy are the Insured's agreements and representations and that this policy and endorsements embody all agreements existing between the Insured and Underwriters relating to this insurance.

This Insurance is issued in accordance with the authorization granted to Roanoke Insurance Group Inc. acting on behalf of certain Underwriters at Lloyd's under Binding Authority Agreement Number B1097 ABI 13 1011.

Case 3:16-cv-00705-GCM   Document 1-1   Filed 10/10/16   Page 12 of 39

# ⟲ ROANOKE

All inquiries or complaints by the Insured must be referred in the first instance to Roanoke Insurance Group whose name and address are provided on the front of this document. Complaints should be referred to James L. Cahalan, Executive Vice President Legal Affairs, Roanoke Insurance Group Inc., 1475 E. Woodfield Road, Suite 500, Schaumburg, IL 60173-4903. If no satisfaction is obtained, complaints should be referred to Policyholder & Market Assistance, Lloyd's Market Services, One Lime Street, London EC3M 7HA, Telephone: +44 (0) 20 7327 5693, Fax +44 (0) 20 7327 5225, email: complaints@lloyds.com.

**Forms and endorsements issued at inception:**

Transportation Intermediary and Customs Brokers Errors and Omissions Insurance Policy EO001 (04/12)
Deletion of Terrorism Exclusion Endorsement EO212 (07/13)
Application signed and dated 10/04/2013

**Date of Issue: 12/19/2013**          **Signed by:** _Michele McAllister_

**Roanoke Insurance Group Inc.**
Coverholder at Lloyd's

The insurance company with which this coverage has been placed is not licensed by the State of North Carolina and is not subject to its supervision. In the event of the insolvency of the insurance company, losses under this policy will not be paid by any State insurance guaranty fund.

Case 3:16-cv-00705-GCM   Document 1-1   Filed 10/10/16   Page 13 of 39



## TRANSPORTATION INTERMEDIARY AND CUSTOMS BROKERS ERRORS AND OMISSIONS INSURANCE POLICY

### THIS IS A CLAIMS MADE POLICY – PLEASE READ IT CAREFULLY

**INSURING AGREEMENTS**

**Underwriters at Lloyd's** (hereinafter called "Underwriters") in consideration of the payment of premium and in reliance upon the statements in the application and subject to the Limits of Liability, exclusions, conditions and other terms of the Policy agrees:

1. **Coverage** – To pay on behalf of the Insured all sums in excess of the deductible amount stated on the Declaration, which the Insured shall become legally obligated to pay as Damages as a result of any claim first made against the Insured and reported to Underwriters during the Policy Period or Extended Reporting Period, if purchased, caused by any negligent act, error or omission of the Insured or any other person for whose acts the Insured is legally liable in the rendering of or failure to render professional services as a Transportation Intermediary or Customs Broker.

    GIVEN ALWAYS THAT such negligent act, error or omission occurs:

    a. during the Policy Period, or

    b. subsequent to the Retroactive Date specified in the Declaration, provided that the Insured as of the effective date of the Policy had no knowledge or could not have reasonably known that such negligent act, error or omission might result in a claim or suit under this Policy.

    A claim is first made against the Insured at the **earliest** of the following:

    a. on the date when a civil proceeding was commenced by the filing of a statement of claim against any Insured;

    b. on the date which an arbitration was commenced by the filing of a statement of claim against any Insured;

    c. on the date when any Insured first received a written demand for monetary damages; or

    d. on the date when any Insured gives us written notice in accordance with Conditions, Item 6, of an act, error or omission that may result in a claim being made against an Insured.

2. **Claims Expenses and Settlement** – With respect to the insurance afforded by the Policy, Underwriters will:

    a. defend any claim or suit against the Insured alleging such negligent act, error or omission and seeking damages which are payable under the terms of the Policy, even if any of the allegations of such claim or suit are groundless, false or fraudulent;

    b. pay all premiums on bonds to release attachments or on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bond;

    c. pay all costs taxed against the Insured in any such suit, all expenses incurred by Underwriters, all interest accruing after entry of judgment until Underwriters have paid, tendered or deposited in court such part of such judgment as does not exceed the limit of Underwriters' liability thereon;

    d. pay all reasonable expenses, other than loss of earnings, incurred by the Insured at Underwriters' request;

    e. have the right to investigate, negotiate and settle any claim or suit as may be deemed expedient by Underwriters.

Case 3:16-cv-00705-GCM   Document 1-1   Filed 10/10/16   Page 14 of 39



The Limits of Liability include payments for Claims Expenses as well as Damages. If the Limits of Liability are exhausted prior to settlement, final judgment or final award, Underwriters shall have the right to withdraw from further defense by tendering control of the defense to the Insured.

Underwriters shall not be obligated to pay any claim, judgment, award or settlement or to defend or to continue to defend any claim after the limits of Underwriters' liability have been tendered to the Insured or into the court or exhausted by payments of Damages and/or Claims Expenses in the form of judgments, awards or settlements.

## EXCLUSIONS

**This Policy does not apply to any claim –**

1. arising out of any dishonest, criminal, fraudulent, malicious or knowingly wrongful act of any Insured, or willful violation of any ordinance;

2. arising out of any actual or alleged negligent act, error or omission occurring prior to the Retroactive date set forth in the declarations;

3. arising out of the bodily injury to or sickness, disease, or death of any person;

4. arising out of injury to, or destruction of, any tangible property (including loss of use thereof), unless caused by the Insured's negligent acts, errors, or omissions as covered under this policy;

5. arising from liability in respect of property in the care, custody, or control of the insured;

6. arising out of any unexplained loss, pilferage, shortage or loss disclosed on taking inventory;

7. for liability for physical loss or damage, or consequential loss arising out of the Insured's liability as a contracting carrier;

8. arising out of the ownership, maintenance, operation or use, including loading and unloading, whether directly or indirectly, by the Insured of watercraft, automobiles, motor vehicles, aircraft or mobile vehicles of any kind;

9. arising out of the advising or requiring of or failure to advise or require, or failure to maintain any form of insurance either with respect to the Insured or any person, firm or organization, unless such acts are concurrent with and incidental to the rendering of other services in the Insured's capacity as a Customs Broker or Transportation Intermediary;

10. arising out of any disputes involving the Insured's fees or charges;

11. brought about, or contributed to, or controlled by an inability or intentional failure to either pay or collect money;

12. arising out of the insolvency of the Insured or the inability to pay of any Insurance Company;

13. made by an Insured against another Insured;

14. made by or against any business enterprise not named in the Declaration which controls or is controlled through 10% or more of voting power or by contract or by common management by an Insured, or is part of a group of companies, one of which is the Named Insured, having common ultimate ownership;

15. made against an Insured solely because the Insured is a partner, officer, director, stockholder or under common ownership, operation, or management;

16. arising out of any liability assumed under any contract or agreement, whether oral or in writing, to hold harmless or indemnify another, *unless* such liability would have arisen even in the absence of such agreement:

17. arising out of any liability solely from the Insured acting as Importer of Record;

# ROANOKE

18. for fines, penalties, punitive, exemplary or enhanced damages of any type levied against the insured: including but not limited to RICO or any state equivalent thereof, except that if a claim is made seeking both compensatory damages and fines, penalties, punitive, exemplary, or enhanced damages, Underwriters will provide defense without liability to pay any fines, penalties, punitive, exemplary, or enhanced damages;

19. arising out of any violation of the Employee Retirement Income Security Act of 1974 (Public Law 93-406), more commonly referred to as the Pension Reform Act of 1974, or any amendments thereto, or similar provisions of any federal, state or local statutory law or common law or any other employee benefit plan(s);

20. arising out of any violation or alleged violation of the Export Administration Act of 1979 regarding certain restrictive trade practices or boycotts or any similar act, law or ordinance unless caused by the Insured's negligent acts, errors, or omissions as covered under this Policy;

21. arising out of libel, slander or defamation of any kind;

22. based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving or relating to:

    a. the refusal to employ any person;
    b. the termination of any person's employment; or
    c. employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline; defamation, harassment, humiliation or discrimination directed at any person; or
    d. employment practices liability or any discrimination on any basis including but not limited to: race, creed, color, ethnic background, national origin, religion, age, gender, sexual orientation, mental or physical handicap or disability, marital status, pregnancy, or other protected category or characteristic established pursuant to any applicable United States federal, state or local statute or ordinance.

23. alleging bodily injury or property damage or liability arising out of the "pollution or toxic injury hazard,"

    a. whether or not the claim arises out of professional services rendered by the insured, goods or containers in which goods are packaged or sold, shipped or forwarded by the insured, or liability arising out of premises owned, leased, occupied or used by the insured.

    b. alleging bodily injury or property damage or liability arising out of the "pollution or toxic injury hazard," whether or not the actual or threat of exposure occurred in a confined or unconfined indoor or outdoor space, and whether or not the bodily injury, property damage or liability arose out of the negligent use or handling of toxic substances that occur in the normal course of business.

    "Pollution or toxic injury hazard" means an actual exposure or threat of exposure to the corrosive, toxic or other harmful properties or effects of any solid, liquid, gaseous or thermal products, or by-products, which are or contain pollutants, contaminants, irritants or toxic substances, including but not limited to smoke, vapors, soot, fumes, acids or alkalis, petroleum or hazardous substances and waste materials consisting of or containing any of the foregoing.

    Underwriters shall have no obligation under the Policy –

    a. to investigate, settle or defend any claim or suit against the Insured alleging actual or threatened injury or damage of any nature or kind to persons or property which arises out of or would not have occurred but for the "pollution or toxic injury hazard"; or

    b. to pay any damages, judgments, settlement, loss, costs or expenses that may be awarded or incurred by reason of any such claim or suit or any such injury or damage, or in complying with any action authorized by law and relating to such injury or damage or liability.

24. caused by or resulting from or in any connection with, either directly or indirectly, the Insured's activities as a Certified Cargo Screening Facility and/or as a Certified Cargo Screener and/or any other activity pertaining to the Certified Cargo Screening Program as administered by the Transportation Security Administration or any other governmental or non-governmental authority.

25. **Terrorism Exclusion** NMA2920

 ROANOKE

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any act of terrorism.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Insured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

26. **War and Civil War Exclusion Clause NMA464**
Notwithstanding anything to the contrary contained herein this Policy does not cover Loss or Damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

27. **Institute Radioactive Contamination, Chemical, Biological, And Electromagnetic Weapons Exclusion Clause CL 370**
This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith. In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

   a. ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

   b. the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

   c. any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter

   d. the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes

   e. any chemical, biological, bio-chemical, or electromagnetic weapon.

28. **Institute Cyber Attack Exclusion Clause CL380**

   a. Subject only to clause 1.2 below, in no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from the use or operation, as a means for inflicting harm, of any computer, computer system, computer software program, malicious code, computer virus or process or any other electronic system.

   b. Where this clause is endorsed on policies covering risks of war, civil war, revolution, rebellion, insurrection, or civil strife arising there from, or any hostile act by or against a belligerent power, or terrorism or any person acting from a political motive, Clause 1.1 shall not operate to exclude losses (which would otherwise be

Case 3:16-cv-00705-GCM   Document 1-1   Filed 10/10/16   Page 17 of 39

# ROANOKE

covered) arising from the use of any computer, computer system or computer software program or any other electronic system in the launch and/or guidance system and/or firing mechanism of any weapon or missile.

29. **U.S. Economic and Trade Sanctions**
Whenever coverage provided by this Policy would be in violation of any U.S. economic or trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void. Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any claim that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.

30. **Sanction Limitation and Exclusion (JC2010/014 dated August 11, 2010)**
No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

## DEFINITIONS

1. **Claim** means a verbal or written demand for money or services received by an Insured. This also includes service of suit or institution of or request to participate in an alternative dispute resolution or request to enter into a settlement agreement. All claims arising from the same act, error, or omission or series of related or continuing acts, errors, or omissions shall be considered to be a single claim. All such claims whenever made shall be considered first made on the date on which the earliest claim was first made.

2. **Claims Expenses** means (1) fees charged by (an) attorney(s) designated by Underwriters and (2) all other fees, costs, and expenses resulting from the investigation, adjustment, defense and appeal of any claim, suit or proceeding arising in connection therewith, if incurred by Underwriters, or by the Insured with written consent of Underwriters. "Claims expenses" do not include salary charges or expenses of regular employees or officials of Underwriters, or fees and expenses of independent adjusters.

3. **Customs Broker** means an agent for an importer who advises on the technical requirement of importing, prepares and files entry documents, obtains the necessary customs bonds, deposits U.S. Import duties, secures release of goods and arranges their delivery to the Importer.

4. **Damages** means, whenever used in the Policy, a monetary judgment, award or settlement and does not include:

   a. punitive or exemplary damages, any enhanced damages which are a multiple of compensatory damages, or fines or penalties;
   b. the restoration of consideration and expenses paid to the Insured for services or goods;
   c. judgments, awards or settlements arising from acts deemed uninsurable by law.

5. **Extended Reporting Period** means the period of time after the end of the Policy Period for reporting claims, suits or proceedings arising out of acts, errors or omissions committed prior to the end of the Policy Period but subsequent to the Retroactive Date, and otherwise covered by the Policy.

6. **Insured** means:

   a. the Named Insured, which is the Insured named in the Declarations;
   b. any persons acting within the scope of their duties on behalf of the Named Insured, as a partner, officer, director, stockholder or employee of the Named Insured;
   c. anyone who previously qualifies as an Insured under paragraphs (a) or (b) above prior to the termination of the required relationship with the Named Insured, but only for professional services rendered within the scope of their duties on behalf of the Named Insured, prior to the termination of the relationship;
   d. any proprietorship, partnership or corporation of which the Named Insured is a successor;
   e. the heirs, executors, administrators, assigns and legal representatives of each of the above Insureds in the event of death, incapacity or bankruptcy.

Case 3:16-cv-00705-GCM   Document 1-1   Filed 10/10/16   Page 18 of 39

7. **Policy Period** means the period of time between the inception date shown in the Declarations and the effective date of termination, expiration or cancellation of coverage and specifically excludes any Extended Reporting Period.

8. **Transportation Intermediary** means an entity that: (1) arranges for the movement of cargo from ports and/or places in the world to ports and/or places in the world on behalf of its customers and/or on behalf of other forwarding agents; (2) processes shipping or related documentation; and (3) performs related activities incidental to such shipments. Transportation Intermediary also includes an agent for a shipper or subagent for another forwarding agent, including other transportation intermediaries (whether air, ocean or surface). An ocean transportation intermediary is licensed by the Federal Maritime Commission. An air transportation intermediary is recognized by the International Air Traffic Association. An ocean transportation intermediary ("OTI") includes the term ocean freight forwarder and non-vessel-operating common carrier as defined in "The Shipping Act of 1984" as amended by "The Ocean Shipping Reform Act of 1998". The term **transportation intermediary** herein also includes Air Cargo Agent (IATA), Air Freight Forwarder, Ocean Consolidator, NVOCC, Shipper's Agent, Property Broker, Domestic Freight Forwarder, Import Freight Forwarder, or Third Party Logistics provider.

## CONDITIONS

1. **Limit of Liability** – Subject to Underwriters' aggregate Limits of Liability as set forth in the Declarations, the Limit of Liability stated in the Declarations as applicable to "each claim", is the limit of Underwriters' liability for all Damages and Claims Expenses arising out of the same or related actual or alleged negligent act, error or omission without regard to the number of demands, suits, proceedings or claimants.

   If additional claims are subsequently made which arise out of the same or related actual or alleged negligent act, error or omission as a claim already made, all such claims, whenever made, shall be considered first made within the Policy Period, which shall include the Extended Reporting Period (Condition 11.), if elected, in which the earliest claim arising out of such actual or alleged negligent act, error or omission was first made, and all such claims shall be subject to the each claim and aggregate Limits of Liability.

   The total Limit of Liability of Underwriters for all claims shall not exceed the applicable amount set forth in the Declarations as the aggregate Limit of Liability for all claims first made against the Insured and reported to Underwriters in writing during the Policy Period, which shall include the Extended Reporting Period (Condition 11.), if elected.

   The inclusion in the Policy of more than one Insured shall not operate to increase the limits of Underwriters' liability.

2. **Deductible** – The deductible amount, if any, stated in the Declarations, shall be subtracted from the total loss payment resulting from each claim, and Underwriters shall be liable only for the difference between such deductible amount and the amounts of insurance otherwise applicable to each claim. The deductible amount will *not* apply to Claims Expenses.

3. **Claims Made** – A claim is first made if during the Policy Period or Extended Reporting Period the Insured shall first have knowledge or become aware of any act, error or omission which could reasonably be expected to give rise to a claim under the Policy and shall during the Policy Period or Extended Reporting Period give written notice thereof to Underwriters in accordance with Condition 6. Further, Underwriters must receive such written notice within 10 days of sending.

4. **Policy Territory** – This Policy applies to acts, errors or omissions committed anywhere in the world providing claim is brought in the United States of America, its territories or possessions, Australia, Austria, Belgium, Canada, Denmark, France, Germany, Greece, Hong Kong, Ireland, Italy, Luxembourg, Netherlands, New Zealand, Portugal, Singapore, South Korea, Spain, Switzerland, Taiwan, or United Kingdom if claim is first made during the Policy Period or during the Extended Reporting Period, if purchased, and otherwise covered by the policy.

5. **Other Insurance** – This Policy excludes claims payable by any other insurance (other than insurance providing excess coverage over the limits provided in the Policy). However, if such other insurance was prior Errors & Omissions coverage written under an Occurrence form that will not respond to a claim because of a restrictive reporting condition, this Policy will respond regardless of the Retroactive Date that may otherwise exclude the claim.

Case 3:16-cv-00705-GCM   Document 1-1   Filed 10/10/16   Page 19 of 39

# ⚙ ROANOKE

6. **Insured's duties in the event of incident, claim or suit –**
   Written notice of each incident, claim, or suit must be sent to:

   > Underwriters at Lloyd's c/o Roanoke Insurance Group Inc.
   > 1475 E. Woodfield Road, Suite 500, Schaumburg, IL 60173
   > Attn: E&O Claims Customer Care
   >
   > Email: karen.rzeszutko@roanoketrade.com
   > Fax: +1 847 969-8200
   > Questions: +1 847 969-1420, and ask for E&O Claims assistance

   a. As soon as the Insured becomes aware of an alleged act, error, or omission that may result in a claim, the Insured must give Underwriters written notice of the incident as soon as practical during the policy period or extended reporting period, if purchased.

   b. If a claim is made or suit is brought against the Insured, the Insured shall:

      1) immediately forward to Underwriters at the address listed above every demand, notice, summons or process received by the Insured or any representative of the Insured;
      2) notify Underwriters as soon as practical, but in any event no later that 60 days after the end of the policy period, or extended reporting period, if purchased.

   c. The Insured shall cooperate with Underwriters and upon Underwriters' request will assist in reaching settlement, in the conduct of suits, and in enforcing any right of contribution or indemnity from any person or organization who may be liable to the Insured because of any act, error or omission to which Insured is afforded coverage under this Policy. In addition, the Insured shall attend hearings and trials, assist in securing and giving evidence, and shall obtain the attendance of witnesses.

   d. The Insured shall not, except at Insured's own cost, make any payment or assume any obligation or incur any expense unless the Insured shall have first consulted with and obtained approval from Underwriters or its designated attorneys.

   **Legal services under this Policy will be provided by law firms as may be designated by Underwriters at its sole discretion. Any legal fees incurred by the Insured without Underwriters' express authorization will not be covered by this Policy.**

7. **Reimbursement of the company –** If Underwriters have paid any amounts in settlement or satisfaction of claims, judgments or awards in excess of the applicable limit of liability, or within the amount of the applicable deductible, the Insureds, jointly and severally, shall be liable to Underwriters for any and all such amounts and, upon demand shall pay such amounts to Underwriters. However, Underwriters shall not be obligated to pay any amounts in excess of the applicable limit of liability but, if Underwriters elect to do so, Underwriters will obtain the written concurrence and permission from the Insured.

8. **Arbitration –** Underwriters shall be entitled to exercise all Insured's rights in the choice of arbitrators and in the conduct of any arbitration proceeding involving a claim covered by this Policy.

9. **Subrogation –** In the event of any payment under this Policy, Underwriters shall be subrogated to all the Insured's rights of recovery for such loss against any person or organization other than an employee of any Insured, and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after a claim to prejudice such rights.

10. **Cancellation and Non Renewal –**

    **Cancellation**

    a. The Named Insured first shown in the Declarations may cancel this policy by:

       1) Mailing or delivering to Underwriters advance written notice of cancellation; or

Case 3:16-cv-00705-GCM   Document 1-1   Filed 10/10/16   Page 20 of 39



2) Surrendering the policy to Underwriters or to any of its authorized agents.

b. Underwriters may cancel this policy by mailing or delivering to the Named Insured first shown in the Declarations written notice of cancellation at least:

1) 10 days before the effective date of cancellation, if Underwriters cancel because of fraud, material misrepresentation or non-payment of any premium when due. Underwriters have a right to cancel if Underwriters discover fraud or material misrepresentation by:

- Any Insured or their representative in obtaining this insurance; or
- The Insured or Insured's representative in pursuing a claim under this policy;

2) 30 days before the effective date of cancellation, if Underwriters cancel for any other reason.

c. Underwriters will mail or deliver its notice to the last mailing address known to Underwriters of the Named Insured first shown in the Declarations and the producer of record. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. Notice of cancellation by Underwriters will state the effective date of cancellation and the reason for the cancellation. The Policy Period will end on that date.

e. If this policy is canceled, Underwriters will send the Named Insured first shown in the Declarations any premium refund due. If Underwriters cancel, the refund will be pro-rata.

f. If the Named Insured cancels, Underwriters shall compute the return premium at 90% of the pro-rata unearned premium. Underwriters shall in any event be entitled to retain any minimum retained premium stated in the Declarations.

g. Premium adjustments may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**Non-Renewal**

a. If Underwriters decide not to renew this policy, Underwriters will mail or deliver written notice of non-renewal with reasons for the non-renewal to the Named Insured first shown in the Declarations and the producer of record, at least 60 days but not more than 120 days before the end of the Policy Period.

b. Underwriters will mail or deliver our notice to the last mailing address known to Underwriters of the Named Insured first shown in the Declarations and the producer of record. Proof of mailing will be sufficient proof of notice.

c. If Underwriters offer to renew this policy and the Named Insured first shown in the Declarations does not accept the offer of Underwriters during the current Policy Period, this policy will expire at the end of such Policy Period.

11. **Extended Reporting Period** – In case of non-renewal or cancellation of this Policy by Underwriters, or by the Insured, the Named Insured shall have the right, upon payment of an additional premium within 10 days of the termination, to have issued an endorsement providing a six (6) month Extended Reporting Period covering claims first reported during the Extended Reporting Period on acts, errors or omissions committed prior to the end of the ORIGINAL Policy Period but subsequent to the Retroactive Date and otherwise covered by the Policy. The premium shall be equal to 50% of the Named Insured's last annual premium. The right of the Insured to exercise the Extended Reporting option will NOT be granted to any insured whose policy has been non-renewed either for non-payment of premium or for failure to reimburse Underwriters for any deductibles advanced.

The fact that this Policy may be extended by virtue of an Extended Reporting Period shall not in any way extend coverage for any acts committed subsequent to the ORIGINAL policy expiration date.

12. **Action Against Company** – No action shall lie against Underwriters unless the Insured shall have fully complied with all the terms of the Policy, and until the amount of the Insured's obligation to pay shall have been fully

Case 3:16-cv-00705-GCM   Document 1-1   Filed 10/10/16   Page 21 of 39



determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and Underwriters.

Any person or organization or their legal representative who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by the Policy. No person or organization shall have any right under this Policy to join Underwriters as a party to any action against the Insured to determine the Insured's liability, nor shall Underwriters be impleaded by the Insured or his legal representative. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve Underwriters of any of its obligations.

13. **Changes in the Policy** – Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or estop Underwriters from asserting any right under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsement issued to form a part of this Policy, signed by a duly authorized representative of Underwriters.

14. **Assignment** – The interest hereunder of any insured is not assignable. If the Insured shall die or be adjudged incompetent, the Policy shall cover the Insured's legal representative as the Insured only with respect to liability previously incurred and covered by this Policy.

15. **Audit** – Underwriters may, but is not obligated to, examine and audit the Insured's books and records at any time during the Policy Period and extensions thereof and within three years after the final termination of the Policy, as far as they are related to the subject matter of this Insurance.

16. **Several Liability Notice LSW1001** – The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.

17. **Service of Suit Clause (USA) NMA1998** – It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon:
        Mendes & Mount (Attorneys)
        750 Seventh Avenue, New York, NY 10019-6829

For Insureds domiciled in California:
        Mendes & Mount (Attorneys)
        445 South Figueroa Street, 38th Fl., Los Angeles, CA 90071-1601

For Insureds domiciled in Kentucky:
        Lloyd's Kentucky, Inc.
        314 West Main Street, Frankfort, KY 40601-1808
and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Case 3:16-cv-00705-GCM   Document 1-1   Filed 10/10/16   Page 22 of 39



Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

IN WITNESS WHEREOF, UNDERWRITERS AT LLOYD'S has caused this policy to be signed by its Authorized Representative, Roanoke Insurance Group Inc., Schaumburg, Illinois. The policy is not binding unless also signed on the Declarations Page by the Authorized Representative.

_____

**Roanoke Insurance Group Inc.**
Lloyd's Coverholder

ROANOKE

| ENDORSEMENT NO. | 01 |
| POLICY NO: | 13EO0078 |
| NAMED INSURED: | American Emo Trans, Inc. |
| EFFECTIVE DATE: | 12/06/2013 |

## DELETION OF TERRORISM EXCLUSION ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

In consideration of the additional premium it is agreed that Exclusion 25 – "Terrorism" shall not apply in respect of the Insured's operations as a Transportation Intermediary and/ or Certified Cargo Screener.

TO THE EXTENT A PROVISION OF THE POLICY OR A PREVIOUS ENDORSEMENT IS INCONSISTENT WITH AN EXPRESS PROVISION OF THIS ENDORSEMENT, THIS ENDORSEMENT CONTROLS, OTHERWISE, THIS ENDORSEMENT IS SUBJECT TO ALL OF THE TERMS AND PROVISIONS OF THE POLICY AND OF ANY PRIOR ENDORSEMENTS TO THE FULLEST EXTENT APPLICABLE.

Certain Underwriters at Lloyd's, London

Date: 12/19/2013

By: _____
Roanoke Insurance Group Inc. Authorized Representative

EO212 (07/13)

<u>Translation</u>

E Mail from Ralf Thomsen/Oerlikon Neumag to Peter Betz/American Emo Trans Inc. dated Thursday, February1 4th, 2013 3:53AM

Subject: Freight Quote USA

Dear Mr. Betz;

We are in process of signing an order ( contract 44.2664 ) for:

Mohawk Industries, Inc.
104 McFarland Drive
30720 Dalton, Ga.
USA

Terms of the contract are DDP and we do need upfront applicable charges.

The order should ship in 7 lots between November 2013 and February 2014.
Each lot will require appr> 2x40ft box containers ( total 14x )
Goods description/HS Code: winders / 84454000

Total value: 3.429.710,00 Euro > FCA value plus ddp charges

Pricing is urgently needed

Thank you.
Best Regards,
Ralf Thomsen
Fulfillment Center

EXHIBIT
B

<u>Translation</u>

E Mail from Peter Betz/American Emo Trans Inc. to Ralf Thomsen/Oerlikon Neumag
dated February 14th, 2013 9:02AM

Dear Mr. Thomsen:

We are able to quote from FCA Glinde to DDP Dalton/Ga.
For 14x40ft standard/high cube containers, shipment in 7 separate lots,
Shipping date between November 2013 and February 2014

USD 77.164,00

1x40ft std/hq container USD 5.511,71

( x ray fees will be charged additional  with USD 300,00 per container, if requested by U.S. Customs,
however chances are remote this will happen )

Thank you very much for your inquiry

Best Regards
Hans P Betz
AMERICAN EMO TRANS INC.

**Peter Betz**

From:         Peter Betz
Sent:         Thursday, February 14, 2013 9:02 AM
To:           Thomsen, Ralf (Oerlikon Neumag)
Cc:           Giesler, Ingo (Oerlikon Neumag)
Subject:      RE: Frachtanfrage USA

Hallo Herr Thomsen;

wir koennen anbieten ab FCA Glinde bis DDP Dalton/Ga.
fuer 14x40ft Container, Verladung erfolgt in 7 separaten Lots,
Verladetermine zwischen November 2013 und Februar 2014;

### USD 77.164,00

1x40ft Std/HQ Container  USD   5.511,71

( X ray Kosten zusaetzlich USD 300,00 per Container, falls dies
vom amerik. Zoll gefordert wird. Moeglichkeit, aeusserst gering )

Vielen Dank fuer Ihre Anfrage.

Mit freundlichen Gruessen
Hans P Betz
AMERICAN EMO TRANS INC.

From: Thomsen, Ralf (Oerlikon Neumag) [ralf.thomsen@oerlikon.com]
Sent: Thursday, February 14, 2013 3:53 AM
To: Peter Betz
Cc: Giesler, Ingo (Oerlikon Neumag)
Subject: Frachtanfrage USA

Hallo Herr Betz,

wir stehen kurz vor Unterzeichnung eines Auftrages (Contract 44.2664) für:

**Mohawk Industries, Inc.**

104 McFarland Drive
30720 Dalton, GA
USA

Da es sich wieder um ein DDP-Geschäft handelt benötigen, wir im Vorwege noch die entsprechenden Kosten.

Der Auftrag soll in 7 Lot's in der Zeit von November 2013 bis Februar 2014 verschifft werden.

Pro Lieferungen werden ca. 2x-40'Box Container  (=Total 14x) benötigt.
Warenbeschreibung / H.S. Code: Wickler / 8445 4000
Gesamtwarenwert: 3.429.710,00 EUR > FCA Wert zzgl. DDP Kosten

Für eine rasche Bearbeitung wären wir dankbar (ist bei Ihnen ja aber ogligatorisch).

Vielen Dank.

Mit freundlichen Grüßen / Best regards

1

**Ralf Thomsen**
**Fulfilment Shipping**

**Oerlikon Neumag**
**Zweigniederlassung der**
**Oerlikon Textile GmbH & Co. KG**
**Christianstraße 168-170**
**D-24536 Neumünster**
**Phone   +49 4321 305-181**
**Fax      +49 4321 305-390**
mailto.ralf.thomsen@oerlikon.com
www.oerlikon.com

Oerlikon Textile GmbH & Co. KG, Leverkuser Strasse 65, 42897 Remscheid, Deutschland / Germany
Gesellschaftsangaben: Kommanditgesellschaft mit Sitz in Remscheid, Handelsregister Wuppertal HRA 22506
Persoenlich haftende Gesellschafterin: OT Textile Verwaltungs GmbH mit Sitz in Arbon, Schweiz, Handelsregister des Kantons Thurgau CH-440.4.021.435-0
Geschaeftsfuehrer: Clement Woon (Vorsitzender), Dr. Georg Fronja, Stefan Kross, Daniel Lippuner, Jan Roettgering, Georg Stausberg, Ulrich Wunder
Corporate Information: Limited Partnership with registered office in Remscheid, Register of Companies Wuppertal HRA 22506
General Partner: OT Textile Verwaltungs LLC with registered office in Arbon, Switzerland, Register of Companies of the Canton Thurgau CH-440.4.021.435-0
Managing Directors: Clement Woon (Vorsitzender), Dr. Georg Fronja, Stefan Kross, Daniel Lippuner, Jan Roettgering, Georg Stausberg, Ulrich Wunder

2

American Emo Trans, Inc.

2600 Hutchison McDonald (zip 28269)
PO Box 19030
Charlotte, NC 28219-9030
USA

SOLD TO: ROANOKE TRADE SERVICES, INC.
PARKSHORE CENTRE
ONE POSTON ROAD
SUITE 100
CHARLESTON, SC 29403

REMIT TO ADDRESS:

American Emo Trans, Inc.
PO Box 19030
Charlotte, NC 28219-9030

| Invoice | Date | Type | | Due Date | Amount |
|---|---|---|---|---|---|
| 1-0983999-A | 1/15/2014 | IN | | 1/22/2014 | 22,856.01 |
| 04140008 -01-3 | 1/31/2014 | IN | | 2/7/2014 | 22,482.27 |
| 04140041-01-2 | 2/17/2014 | IN | | 2/24/2014 | 22,671.57 |
| 04140122-01-2 | 2/28/2014 | IN | | 3/7/2014 | 21,909.07 |
| 04140163-01-2 | 3/17/2014 | IN | | 3/24/2014 | 22,130.55 |
| 04140204-01-2 | 3/31/2014 | IN | | 4/7/2014 | 22,911.25 |
| 04140074-01-2 | 4/24/2014 | IN | | 5/1/2014 | 23,592.75 |

IN - Invoice    PY - Applied Receipt    UC - Unapplied Cash
DB - Debit Note    ED - Earned Discount    RF - Refund
CR - Credit Note    AD - Adjustment
IT - Interest Payable    PI - Prepayment

| | |
|---|---|
| Total: | 158,553.47 |
| Credit Limit: | 0.00 |
| Credit Available: | 0.00 |

| 1 - 10 DAYS O/DUE | 11 - 20 DAYS O/DUE | 21 - 30 DAYS O/DUE | OVER 30 DAYS O/DUE |
|---|---|---|---|
| 0.00 | 0.00 | 0.00 | 158,553.47 |

**Peter Betz**

From:        Christy King
Sent:        Thursday, August 04, 2016 3:32 PM
To:          Peter Betz
Subject:     FW: Our File #: 3143026012

Here is the first email that I sent to Jason after speaking with him around January 8, 2014.

Best Regards,

*Christy*

From: Karen Rzeszutko [mailto:Karen.Rzeszutko@roanoketrade.com]
Sent: Tuesday, February 18, 2014 10:20 AM
To: Jason Odgers; Christy King
Cc: Gail Pike
Subject: Our File #: 3143026012

Dear Christy,

Please advise the current status of this matter and let me know if you'll be submitting the information noted below:

1. Who is listed as the importer of record?  We discussed already – Orlikon Textiles in Germany (Foreign Importer)
2. Copy of entry summary for the 1 container
3. Copy of quotes for the containers – You provided in separate email
4. Copies of freight invoices issued (front and reverse side)
5. Copy of any contract EMO has with their customer
6. Copy of any signed Power of Attorney
7. Copies of all communications relating to the issue between all parties
8. What are they going to do with the other 11 containers? As discussed, total 7 containers.  Must be shipped to fulfill contract between Orlikon and Mohawk
9. Copy of AET's standard terms & conditions of service (NCBFAA's recommended T&C's?)

Best regards,
Karen Rzeszutko
Professional Liability Claims Manager
Roanoke Claims Services
1475 E. Woodfield Road, Suite 500
Schaumburg, IL 60193
Phone #: 847-969-8271
Fax #: 847-969-3271
Karen.Rzeszutko@RoanokeTrade.com

New FastBond™ report options deliver optimum control over and immediate access to vital data!
Roanoke Trade, a division of Roanoke Insurance Group Inc. is a subsidiary of Münchener Rückversicherungs-Gesellschaft (Munich Re).
Insurance coverage or change requests are not binding unless confirmation is received from a licensed Roanoke employee.

From: Jason Odgers
Sent: Thursday, January 30, 2014 12:14 PM
To: 'Christy King'

1

Christy,
Good afternoon, hope you guys are staying warm up there!

I just left you a vm at the office and thought I'd follow up with an email to enquire as to the status of the below. Please let us know if there have been any developments and if AET is planning to continue moving forward with the E&O claim which we discussed. If so, please confirm the answers to the below referenced questions and we'll resume working on the file. Thanks!

Jason Odgers
Sr. Account Executive
Roanoke Trade Services, Inc.

Parkshore Centre, One Poston Rd, Suite 100, Charleston, SC 29407
Direct: +1 843-724-7534    Fax: +1 843-556-0975
Mobile +1 843-408-5927
Main: +1 800-ROANOKE, ext. 5534
jason.odgers@roanoketrade.com

www.linkedin.com/in/jasonodgers

New FastBond™ report options deliver optimum control over and immediate access to vital data!
Roanoke Insurance Group is a subsidiary of Münchener Rückversicherungs-Gesellschaft (Munich Re).
*Insurance coverage or change requests are not binding unless confirmation is received from a licensed Roanoke employee*

---

**From:** Jason Odgers
**Sent:** Friday, January 17, 2014 10:52 AM
**To:** 'Christy King'
**Cc:** Jason Odgers; Gail Pike
**Subject:** RE: Email Quote

Christy,
Good morning!  Wanted to check in on the status of the below. We have opened a "watch" claim and the claims manager has just enquired as to whether we've been able to put together any of the below info. Please let me know if there have been any developments and if any of the referenced back up is available. Thanks!

Jason Odgers
Sr. Account Executive
Roanoke Trade Services, Inc.

Parkshore Centre, One Poston Rd, Suite 100, Charleston, SC 29407
Direct: +1 843-724-7534    Fax +1 843-558-0975
Main: +1 800-ROANOKE, ext. 5534
jason.odgers@roanoketrade.com

www.linkedin.com/in/jasonodgers

New FastBond™ report options deliver optimum control over and immediate access to vital data!
Roanoke Insurance Group is a subsidiary of Münchener Rückversicherungs-Gesellschaft (Munich Re).
*Insurance coverage or change requests are not binding unless confirmation is received from a licensed Roanoke employee*

Case 3:16-cv-00705-GCM   Document 1-1   Filed 10/10/16   Page 31 of 39

**From:** Jason Odgers
**Sent:** Wednesday, January 08, 2014 3:54 PM
**To:** 'Christy King'
**Subject:** RE: Email Quote

Christy,
Per our telecon, below is the info requested from Claims:

10. Who is listed as the importer of record?   We discussed already – Orlikon Textiles in Germany (Foreign Importer)
11. Copy of entry summary for the 1 container
12. Copy of quotes for the containers – You provided in separate email
13. Copies of freight invoices issued (front and reverse side)
14. Copy of any contract EMO has with their customer
15. Copy of any signed Power of Attorney
16. Copies of all communications relating to the issue between all parties
17. What are they going to do with the other 11 containers? As discussed, total 7 containers.  Must be shipped to fulfill contract between Orlikon and Mohawk
18. Copy of AET's standard terms & conditions of service (NCBFAA's recommended T&C's?)

Jason Odgers
Sr. Account Executive
Roanoke Trade Services, Inc.

Parkshore Centre, One Poston Rd, Suite 100, Charleston, SC 29407
Direct: +1 843-724-7534   Fax: +1 843-556-0975
Main: +1 800-ROANOKE, ext. 5534
jason.odgers@roanoketrade.com

www.linkedin.com/in/jasonodgers

New FastBond™ report options deliver optimum control over and immediate access to vital data!
Roanoke Insurance Group is a subsidiary of Münchener Rückversicherungs-Gesellschaft (Munich Re).
*Insurance coverage or change requests are not binding unless confirmation is received from a licensed Roanoke employee*

---

**From:** Christy King [mailto:CKing@emo-clt.com]
**Sent:** Wednesday, January 08, 2014 2:42 PM
**To:** Jason Odgers
**Subject:** Email Quote

Hi Jason,

Below is the quote from Peter to Mr. Thomsen.  It is in Germany and I have included the translation in the boxes.  The quote is a DDP quote which includes the duty.

Case 3:16-cv-00705-GCM   Document 1-1   Filed 10/10/16   Page 32 of 39

Best Regards,

*Christy*

Hi Thomsen;

We can offer from FCA Glinde until DDP Dalton/GA. containers, loading for 14x40ft in 7 of separate lots, reverse charging dates between November 2013 and February 2014;

USD 77.164,00

1x40ft STD/HQ container USD 5.511,71

(x-ray cost in addition $ 300.00 per container, if this of the Americ.) Customs is required. Possibility of very low) thank you for your inquiry.

**Hallo Herr Thomsen;**

4

wir koennen anbieten ab FCA Glinde bis DDP Dalton/Ga.

fuer 14x40ft Container, Verladung erfolgt in 7 separaten Lots,

Verladetermine zwischen November 2013 und Februar 2014;


USD 77.164,00


1x40ft Std/HQ Container  USD  5.511,71


( X ray Kosten zusaetzlich USD 300,00 per Container, falls dies

vom amerik. Zoll gefordert wird. Moeglichkeit, aeusserst gering )


Vielen Dank fuer Ihre Anfrage.


Mit freundlichen Gruessen

Hans P Betz

AMERICAN EMO TRANS INC.

---

**From:** Thomsen, Ralf (Oerlikon Neumag) [ralf.thomsen@oerlikon.com]
**Sent:** Thursday, February 14, 2013 3:53 AM
**To:** Peter Betz
**Cc:** Giesler, Ingo (Oerlikon Neumag)
**Subject:** Frachtanfrage USA

Hallo Herr Betz,

We
are
close
to
signing

Case 3:16-cv-00705-GCM   Document 1-1   Filed 10/10/16   Page 34 of 39

a contract (contract 44.2664) for:

Mohawk industries, Inc.

104 McFarland drive 30720

Dalton, GA

United States

Because it is once again a DDP business need, we in advanc

6

e the corresponding costs.

The order will shipped BB's In 7 lot in time by November 2013-February 2014.

Pro deliveries are approximately 2 x-40 ' box container (= total 14 x) is required.

Description of goods / h.s. code: winder / 8445 4000 total goods value: 3.429.710,00 EUR>F CA value plus

DDP costs

For a rapid processing we would grateful.

wir stehen kurz vor Unterzeichnung eines Auftrages (Contract 44.2664) für:

**Mohawk Industries, Inc.**

104 McFarland Drive

30720 Dalton, GA

USA

Da es sich wieder um ein DDP-Geschäft handelt benötigen, wir im Vorwege noch die entsprechenden Kosten.

Der Auftrag soll in 7 Lot's in der Zeit von November 2013 bis Februar 2014 verschifft werden.

Pro Lieferungen werden ca. 2x-40´Box Container  (=Total 14x) benötigt.

Warenbeschreibung / H.S. Code: Wickler / 8445 4000

Gesamtwarenwert: 3.429.710,00 EUR > FCA Wert zzgl. DDP Kosten

Für eine rasche Bearbeitung wären wir dankbar (ist bei Ihnen ja aber ogligatorisch).

Vielen Dank.

Mit freundlichen Grüßen / Best regards

Ralf Thomsen
Fulfilment Shipping

8

Oerlikon Neumag
Zweigniederlassung der
Oerlikon Textile GmbH & Co. KG
Christianstraße 168-170
D-24536 Neumünster
Phone +49 4321 305-181
Fax +49 4321 305-390
mailto.ralf.thomsen@oerlikon.com
www.oerlikon.com

Oerlikon Textile GmbH & Co. KG, Leverkuser Strasse 65, 42897 Remscheid, Deutschland / Germany
Gesellschaftsangaben: Kommanditgesellschaft mit Sitz in Remscheid, Handelsregister Wuppertal HRA 22506
Persoenlich haftende Gesellschafterin: OT Textile Verwaltungs GmbH mit Sitz in Arbon, Schweiz, Handelsregister des Kantons Thurgau CH-440.4.021.435-0
Geschaeftsfuehrer: Clement Woon (Vorsitzender), Dr. Georg Fronja, Stefan Krosa, Daniel Lippuner, Jan Roettgering, Georg Stausberg, Ulrich Wunder
Corporate Information: Limited Partnership with registered office in Remscheid, Register of Companies Wuppertal HRA 22506
General Partner: OT Textile Verwaltungs LLC with registered office in Arbon, Switzerland, Register of Companies of the Canton Thurgau CH-440.4.021.435-0
Managing Directors: Clement Woon (Vorsitzender), Dr. Georg Fronja, Stefan Krosa, Daniel Lippuner, Jan Roettgering, Georg Stausberg, Ulrich Wunder
.

Click here to report this email as spam.

This message has been scanned for malware by Websense. www.websense.com

Case 3:16-cv-00705-GCM   Document 1-1   Filed 10/10/16   Page 38 of 39

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16-CVS-16422

AMERICAN EMO TRANS, INC.,

Plaintiff,

vs.

MUNICH RE SYNDICATE, LTD, F.K.A.
WATKINS UNDERWRITERS AT
LLOYD'S,

Defendants.

**ACCEPTANCE OF SERVICE**

Pursuant to the provisions of the Errors & Omissions Policy for American EMO Trans, Inc., with effective date of December 6, 2013 to December 6, 2014, Page 12, Paragraph 17, titled Service of Suit Clause (USA), the undersigned hereby accepts service of the Summons and Complaint in this matter on behalf of Munich Re Syndicate, Ltd, F.K.A. Watkins Underwriters at Lloyd's as of the date below.

This the _____ day of September, 2016.

**MENDES & MOUNT LLP**

By: _____

750 Seventh Avenue
New York, New York 10019
Telephone: (212) 261-8000
Agent For Service of Process for Munich Re
Syndicate, Ltd, F.K.A. Watkins Underwriters at
Lloyd's